STATE OF CONNECTICUT *v.* NICHOLAS M. MENDITTO
(AC 34999)

DiPentima, C. J., and Alvord and Sullivan, Js.

Argued September 11—officially released December 24, 2013

*Naomi T. Fetterman*, with whom, on the brief, was *Aaron J. Romano*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Matthew Gedansky*, state's attorney, and *Andrew Durham*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The dispositive issue in this appeal is whether the modification of penalties for illegal possession of marijuana following the enactment of No.

11-71 of the 2011 Public Acts (P.A. 11-71) "decriminal-
ized" the possession of less than one-half ounce of
marijuana for purposes of General Statutes § 54-142d.[1]
The defendant, Nicholas M. Menditto, appeals from the
judgments of the trial court denying his petitions for
destruction of records of his convictions for two counts
of possession of a controlled substance in violation
of General Statutes (Rev. to 2009) § 21a-279 (c),[2] and
denying his motions to dismiss his violation of proba-
tion proceedings and charges of possession of a con-
trolled substance in violation of General Statutes (Rev.
to 2011) § 21a-279 (c)[3] and use of drug paraphernalia
in violation of General Statutes (Rev. to 2011) § 21a-
267 (a).[4] On appeal, the defendant claims that the trial
court erred in denying (1) his petitions for destruction
of records, and (2) his motions to dismiss. We affirm
the judgments of the trial court.

[1] General Statutes § 54-142d provides in relevant part: "Whenever any
person has been convicted of an offense in any court in this state and such
offense has been decriminalized subsequent to the date of such conviction,
such person may file a petition . . . for an order of erasure, and the Superior
Court or records center of the Judicial Department shall direct all police and
court records and records of the state's or prosecuting attorney pertaining to
such case to be physically destroyed."

[2] General Statutes (Rev. to 2009) § 21a-279 (c) provides: "Any person who
possesses or has under his control any quantity of any controlled substance
other than a narcotic substance, or a hallucinogenic substance other than
marijuana or who possesses or has under his control less than four ounces
of a cannabis-type substance, except as authorized in this chapter, for a
first offense, may be fined not more than one thousand dollars or be impris-
oned not more than one year, or be both fined and imprisoned; and for a
subsequent offense, may be fined not more than three thousand dollars or
be imprisoned not more than five years, or be both fined and imprisoned."

[3] The language in the 2009 and 2011 statutory revisions of § 21a-279 (c)
is identical. See footnote 2 of this opinion.

[4] General Statutes (Rev. to 2011) § 21a-267 (a) provides: "No person shall
use or possess with intent to use drug paraphernalia, as defined in subdivi-
sion (20) of section 21a-240, to plant, propagate, cultivate, grow, harvest,
manufacture, compound, convert, produce, process, prepare, test, analyze,
pack, repack, store, contain or conceal, or to ingest, inhale or otherwise
introduce into the human body, any controlled substance, as defined in
subdivision (9) of section 21a-240. Any person who violates any provision
of this subsection shall be guilty of a class C misdemeanor."

The record reveals the following facts and procedural history. On October 28, 2009, the defendant entered pleas of guilty in two matters on two charges of possession of a controlled substance in violation of General Statutes (Rev. to 2009) § 21a-279 (c).[5] The defendant received a total effective sentence of two years incarceration, execution suspended, and eighteen months probation. During his probationary period, the defendant was arrested on March 25, 2011, and again charged in a third matter[6] with possession of a controlled substance in violation of General Statutes (Rev. to 2011) § 21a-279 (c) in addition to use of drug paraphernalia in violation of General Statutes (Rev. to 2011) § 21a-267 (a). As a result, on April 26, 2011, the defendant was charged in two separate dockets with violation of probation pursuant to General Statutes § 53a-32. See footnote 5 of this opinion.

On July 1, 2011, P.A. 11-71 became effective. Public Act 11-71 modified the penalties for possession of less than one-half ounce of marijuana to make conduct that previously was a crime under General Statutes (Rev. to 2011) § 21a-279 (c) a violation under newly enacted General Statutes § 21a-279a (a). See Public Acts 2011, No. 11-71, § 1 (a) (P.A. 11-71). Section 21a-279a (a) provides in relevant part: "Any person who possesses or has under his control less than one-half ounce of a cannabis-type substance . . . shall (1) for a first offense, be fined one hundred fifty dollars, and (2) for a subsequent offense, be fined not less than two hundred dollars or more than five hundred dollars." Citing this modification of penalties in accordance with P.A. 11-71, on July 20, 2011, the defendant filed a motion to dismiss the March, 2011 charges of possession and use of drug paraphernalia. Additionally, on July 21, 2011,

[5] The pleas were entered in two separate matters, Criminal Docket Nos. CR-09-0095007-S and CR-09-0095107-S.

[6] See Criminal Docket No. CR-11-0098784-S.

the defendant filed petitions for destruction of records of his previous convictions and motions to dismiss his violation of probation proceedings. In his petitions, the defendant argued that as a result of the enactment of P.A. 11-71, § 54-142d applied to his previous convictions, and, therefore, pursuant to that statute his records should have been destroyed.

In separate memoranda of decision, the court, *Baldini, J.*, denied the defendant's petitions for destruction of records and the defendant's motions to dismiss. With respect to the defendant's petitions for destruction of records and his motions to dismiss his violation of probation proceedings, the court concluded that P.A. 11-71 did not decriminalize the possession of less than one-half ounce of marijuana for purposes of § 54-142d. The court found that the defendant's convictions, which remain violations under § 21a-279a (a), fell outside the reach of § 54-142d. With respect to the defendant's motion to dismiss the March, 2011 charges of possession and use of drug paraphernalia, the court followed the reasoning set forth in *State* v. *Graham*, 56 Conn. App. 507, 743 A.2d 1158 (2000), and concluded that the "savings statutes"; see General Statutes § 1-1 (t)[7] and General Statutes § 54-194[8]; precluded dismissal.[9]

---

[7] General Statutes § 1-1 (t) provides: "The repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed."

[8] General Statutes § 54-194 provides: "The repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect."

[9] "[I]n *State* v. *Daley*, 29 Conn. 272, 277 (1860), our Supreme Court held that a defendant could not be prosecuted if the criminal statute had been amended after the crime and the legislature failed to enact any 'savings clause' governing prior offenses. The legislature's response has been the enactment of savings statutes as reflected in General Statutes § 54-194 . . . and in General Statutes § 1-1 (t) . . . ." *State* v. *Graham*, supra, 56 Conn. App. 510–11.

The defendant thereafter entered conditional pleas of nolo contendere as to the March, 2011 charge of possession and the two violation of probation charges, pursuant to General Statutes § 54-94a.[10] The court, *Mullarkey, J.*, accepted the pleas, fined the defendant $150 and terminated his probation.[11] This appeal followed.

I

The defendant first claims that the court erred in denying his petitions for destruction of records. Specifically, the defendant argues that the term "decriminalized" in § 54-142d, properly construed and given its plain meaning, encompasses the reclassification of a crime to a violation. Relying on this interpretation of the term, the defendant argues further that P.A. 11-71 decriminalized the possession of less than one-half ounce of marijuana by making conduct that was a crime under General Statutes (Rev. to 2009) § 21a-279 (c) a violation under § 21a-279a (a). The state counters that the plain meaning of "decriminalized" is synonymous with legalization. Accordingly, the state contends that the remedies under § 54-142d are not permitted in this case because P.A. 11-71 did not legalize the possession of less than one-half ounce of marijuana. We reject the defendant's claim and agree with the state.

---

[10] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[11] The count alleging use of drug paraphernalia in Criminal Docket No. CR-11-0098784-S was nolled.

The resolution of this appeal requires us to interpret the term "decriminalized" in § 54-142d. "Statutory interpretation is a question of law over which this court exercises plenary review." *State* v. *LaFleur*, 307 Conn. 115, 125, 51 A.3d 1048 (2012). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 150–51, 12 A.3d 948 (2011).

As § 1-2z directs, we begin our analysis with the text of the statute. Section 54-142d provides in relevant part: "Whenever any person has been convicted of an offense in any court in this state and such *offense has been decriminalized* subsequent to the date of such conviction, such person may file a petition . . . for an order of erasure, and the Superior Court or records center

of the Judicial Department shall direct all police and court records and records of the state's or prosecuting attorney pertaining to such case to be physically destroyed." (Emphasis added.) Noticeably, the text of the statute does not expressly define the term decriminalized. A wider search, moreover, reveals that the term is not expressly defined elsewhere in the General Statutes. Our textual inquiry, however, does not end here.

As part of our textual analysis under § 1-2z, General Statutes § 1-1 (a) requires that we construe decriminalized in accordance with the commonly approved usage of the language. See *State* v. *Fernando A.*, 294 Conn. 1, 17, 981 A.2d 427 (2009). Put another way, "[i]f a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 616, 72 A.3d 394 (2013). The common understanding of decriminalized, when applied to the facts of this case, does not provide a conclusive meaning. See, e.g., Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) (to decriminalize is "to remove or reduce the criminal classification or status of; *esp* : to repeal a strict ban on while keeping under some form of regulation"); but see Black's Law Dictionary (9th Ed. 2009) (decriminalization is "[t]he legislative act or process of legalizing an illegal act"). Depending on the dictionary, the defendant and the state find support for their respective interpretations of decriminalized. Thus, in ordinary usage, decriminalized, as applied to the facts of this case, can refer to either complete legalization, as the state advocates, or to the reclassification of a crime to a violation, as the defendant urges.

Continuing our textual analysis, we look to find meaning in the relationship of § 54-142d to other statutes. We note, preliminarily, that our case law in this area reveals that the meaning of a term or phrase may be

discerned by looking to other statutes both within, and outside, the specific chapter of the General Statutes at issue. In *Marchesi* v. *Board of Selectmen*, supra, 309 Conn. 617–18, our Supreme Court arrived at the meaning of the language in General Statutes § 13a-40 by considering, in part, relevant statutes outside of the specific chapter in question, specifically General Statutes §§ 8-8 (k) and 4-183 (i). Again, in *McCoy* v. *Commissioner of Public Safety*, supra, 300 Conn. 155–56, the Supreme Court considered, inter alia, General Statutes § 53a-24 (a) in its determination of whether the legislature intended a violation of General Statutes § 14-227a to be a crime. Similarly, in *State* v. *Boswell*, 142 Conn. App. 21, 30–31, 33, 62 A.3d 1158 (2013), this court arrived at the meaning of the word "offense" in § 54-142d by looking outside that particular chapter of the General Statutes to the definition of offense in § 53a-24 (a). The analytical process in *Boswell* is particularly instructive because it is factually very similar to this case. In *Boswell*, not only was § 54-142d the subject of interpretation but the invocation of the statute was the result of a legislative amendment to the sexual assault statutes. Id., 23.

Guided by this precedent, and principally *Boswell*, we proceed to determine the definition of "decriminalized" as used in § 54-142d. Citing the plain meaning rule, the defendant claims that an offense that is no longer a crime is decriminalized for purposes of § 54-142d. Much of the defendant's analysis is focused on the legislative history of P.A. 11-71. The state, on the other hand, refutes the relevancy of the legislative intent behind P.A. 11-71 to this appeal and contends that the meaning of "decriminalized" is properly understood by examining the statutory definition of "offense" in § 53a-24 (a).[12] Specifically, the state claims that the statutory

---

[12] General Statutes § 53a-24 (a) provides: "The term 'offense' means any crime or violation which constitutes a breach of any law of this state or any other state, federal law or local law or ordinance of a political subdivision

definition of offense in § 53a-24 (a), which refers to either a crime or a violation, should be imported and given the same meaning in § 54-142d. In doing so, the state contends, the phrase "offense has been decriminalized" in § 54-142d can only be construed to mean legalization. We are persuaded by the state's argument.

Preliminarily, we note two well settled rules of statutory construction. The first is that "the legislature is presumed . . . to know the state of existing relevant law when it enacts a statute . . . ." (Internal quotation marks omitted.) *State* v. *Fernando A.*, supra, 294 Conn. 19. The second is that "[w]e presume that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, supra, 309 Conn. 615. Applying these two rules, we arrive at a plain and unambiguous meaning of the term decriminalized as applied to the facts of this case.

Under the first rule of construction, we presume that the legislature was aware of the definition of offense in § 53a-24 (a) when it used the same term in § 54-142d, because § 54-142d was enacted after § 53a-24. See, e.g., *McCoy* v. *Commissioner of Public Safety*, supra, 300 Conn. 154–55. Indeed, in *State* v. *Boswell*, supra, 142 Conn. App. 30–31, this court concluded that "offense" in § 54-142d should be given the same meaning as "offense" in § 53a-24 (a). As we did in *Boswell*, we import the definition of offense from § 53a-24 (a) to

of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. The term 'crime' comprises felonies and misdemeanors. Every offense which is not a 'crime' is a 'violation'. Conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense."

our textual analysis of § 54-142d.[13] In so doing, and mindful of the second rule of construction that no clause, sentence or word shall be superfluous, void or insignificant, we conclude that the defendant's interpretation of decriminalized becomes unreasonable.

The text of § 54-142d makes clear that the destruction of records is appropriate "[w]henever any person has been convicted of an offense . . . and *such offense has been decriminalized* . . . ." (Emphasis added.) If, as the defendant contends, the word decriminalized referred to the change from a crime to a violation, the word offense in § 54-142d would be superfluous and meaningless. Because offense in § 54-142d must be read to encompass either a crime or *a violation*, half of its meaning would be lost by adopting the defendant's interpretation of decriminalized because a violation would never be able to be decriminalized. The acceptance of the defendant's interpretation, therefore, would violate the second rule of statutory construction, namely, that the legislature does not intend to enact meaningless words or provisions. See, e.g., *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 303–304, 21 A.3d 759 (2011) (rejecting interpretation of General Statutes §§ 12-33 and 12-597 on basis of this rule of construction); see also *State* v. *LaFleur*, supra, 307 Conn. 133 (rejecting interpretation of General Statutes § 53a-3 [7] that rendered words meaningless and redundant). Accordingly, the meaning of the term decriminalized, as applied to the facts of this case, must be interpreted to mean legalization in order to be read in conjunction with, and give full meaning to, the term offense.

We conclude, therefore, that the meaning of the term decriminalized, as ascertained from the text of § 54-142d and its relationship to other statutes, is plain and

---

[13] We note that during oral argument before this court, the defendant conceded that the definition in § 53a-24 (a) should, in fact, be adopted in § 54-142d.

unambiguous. Thus, there is no basis to turn to extratextual sources, including the legislative history, for further consideration. See General Statutes § 1-2z; see, e.g., *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 847–51, 937 A.2d 39 (2008). We further conclude that the term decriminalized in § 54-142d, when read in context and applied to the facts of this case, means legalization. Consequently, the court did not err in denying the defendant's petitions for destruction of records.

## II

The defendant next claims that the court erred in denying his motions to dismiss. As to the motions to dismiss his violation of probation proceedings, the defendant argues that "the State should not have been permitted to prosecute [the defendant] for violating the probation of a conviction that should rightfully be erased." As to the motion to dismiss his charges of possession of a controlled substance in violation of General Statutes (Rev. to 2011) § 21a-279 (c) and use of drug paraphernalia in violation of General Statutes (Rev. to 2011) § 21a-267 (a), the defendant argues that the savings statutes; see General Statutes §§ 1-1 (t) and 54-194; "cannot attach to conduct that is no longer considered a crime."

We first turn to the defendant's argument regarding his motions to dismiss his violation of probation proceedings. As we concluded in part I of this opinion, the defendant's convictions should not have been erased under § 54-142d. Accordingly, the defendant's sentences of probation continue to be enforceable. We conclude therefore that the court did not err in denying the defendant's motions to dismiss his violation of probation proceedings.

We next turn to the claim that the court erred in denying the defendant's motion to dismiss the March,

2011 charges of possession and use of drug paraphernalia. Relying on *State* v. *Graham*, supra, 56 Conn. App. 507, the court found that the savings statutes applied to the defendant's conduct and concluded that "the defendant may appropriately be prosecuted and punished under the version of General Statutes § 21a-279 (c) that was in effect at the time of the alleged offense."[14] We agree.

Generally, "a defendant is prosecuted and sentenced under the statutes in effect at the time the defendant commits the offense. The legislature has enacted savings statutes as reflected in General Statutes § 54-194, which provides that [t]he repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect; and in General Statutes § 1-1 (t), which provides that [t]he repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed." (Internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 133 Conn. App. 458, 465, 37 A.3d 758 (2012). "Our courts have repeatedly held that these savings statutes preserve all prior offenses and liability therefor so that when a crime is committed and the statute violated is later amended or repealed, defendants remain liable under the revision of the statute existing at the time of the commission of the crime." *State* v. *Graham*, supra, 56 Conn. App. 511.

---

[14] General Statutes (Rev. to 2011) § 21a-279 (c) was in effect in March, 2011. Its language is identical to the 2009 statutory revision. See footnote 2 of this opinion.

There is no express language in P.A. 11-71 or any indication in the legislative history that the legislature clearly and unequivocally intended P.A. 11-71 to apply retroactively. See *Mead* v. *Commissioner of Correction*, 282 Conn. 317, 325, 920 A.2d 301 (2007) (presumption of prospective effect of statute only overcome by clear and unequivocal expression of retrospective effect). Instead, P.A. 11-71 expressly provides an effective date of July 1, 2011. For these reasons, the savings statutes apply, and the law in effect at the time of the defendant's offense, General Statutes (Rev. to 2011) § 21a-279 (c), controls. See, e.g., *State* v. *Graham*, supra, 56 Conn. App. 511–12. Accordingly, we conclude that the court did not err in denying the defendant's motion to dismiss the March, 2011 charges.

The judgments are affirmed.

In this opinion the other judges concurred.